UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
WAYNE SIGMON, Trustee in Bankruptcy for       :
Karen LeBauer Hindin,                          :
                                               :
                                       Plaintiff,    :   1:12-cv-3367 (ALC)
                                               :
         -against-                            :   <u>OPINION & ORDER</u>
                                               :
GOLDMAN SACHS MORTGAGE COMPANY,                :
MLQ HOTEL, L.L.C., MLQ HOTEL, L.L.C.,          :
MLQ DML SPA, L.L.C. and MLQ DML                :
RESTAURANT, L.L.C.,                            :
                                               :
                                     Defendants,  :
------------------------------------------------------------------x

ANDREW L. CARTER, JR., United States District Judge:

## I. INTRODUCTION

In this action, Plaintiff Wayne Sigmon, as the Trustee of Debtor Karen LeBauer Hindin ("Trustee" and "Debtor," respectively), seeks to avoid the transfer of the Debtor's alleged property to Defendants, Goldman Sachs Mortgage ("Goldman Sachs"), MLQ DML Hotel, LLC, MLQ DML Spa LLC and MLQ DML Restaurant LLC (collectively, "MLQ Defendants" and together with Goldman Sachs, "Defendants"). The Trustee claims two defects with the underlying contract: that it effected a fraudulent transfer under Utah law and that it contained a provision that rendered the entire contract void as against public policy. Defendants have moved to dismiss the Trustee's Second Amended Complaint in its entirety. For the reasons discussed below, that motion is granted in part and denied in part.

## II. BACKGROUND

### A. Factual Background

As of July 8, 2009, Debtor held a 50% interest in Dakota Mountain Lodge LLC ("Dakota"). (Second Am. Compl. ¶ 9.) As of October 27, 2009, Dakota in turn held a 50% interest in Duval Development Partners I Holdings ("DDP Holdings"), which held a 100% interest in Duval Development Partners I ("DDP"). (Second Am. Compl. ¶ 10-11.) In addition, Dakota held a 40% interest in DML Holdings, another limited liability company, which held a 100% interest in Dakota Hotel Unit LLC ("Dakota Hotel") and Dakota Restaurant Unit LLC ("Dakota Restaurant"). (Second Am. Compl. ¶ 13-14.)

Goldman Sachs acted as lender under a Loan Agreement, dated June 29, 2006, with DDP Holdings and DDP (the "Original Borrowers"). (Second Am. Compl. ¶ 15-16.) DDP was the record owner of at least a portion of a luxury hotel and spa property in Park City, Utah (the "Property") subject to a Construction Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing recorded on or after June 29, 2006 (the "Deed of Trust"). (Second Am. Compl. ¶ 12.) On June 22, 2009, Dakota Hotel and Dakota Restaurant acquired the Property from DDP by quitclaim deed, at which point Dakota Hotel and Dakota Restaurant became Additional Borrowers also liable for the obligations of the Loan Agreement. (Second Am. Compl. ¶ 22.) The Debtor was a guarantor for the financing of the project and signed personal guaranties to increase the amounts of maximum indebtedness under the Deed of Trust and subsequent amendments to the Deed of Trust, guaranteeing the full amount of the Deed of Trust. (Second Am. Compl. ¶ 21.)

By September 2009, the Borrowers had defaulted on the Loan Agreement, rendering the Loan due and payable in full. (Second Am. Compl., Ex. A at 4). But to avoid the delay and

expense of foreclosure proceedings, the Borrowers and Goldman Sachs entered a Deed in Lieu of Foreclosure Agreement ("Deed in Lieu Agreement"), executed on October 27, 2009. *Id.* In accordance with the Deed in Lieu Agreement and "at the direction of Goldman," DDP Holdings, DDP, Dakota Hotel, and Dakota Restaurant (collectively, the "Borrowers") conveyed their aggregate 100% interest in the Property to the MLQ Defendants by special warranty deed. (Second Am. Compl. ¶¶ 23, 25.)

The Deed in Lieu Agreement included provisions indicating that the loan exceeded the value of the Property. (Second Am. Compl., Ex. A §§ 30). There is also a provision under which the Lender covenants not to sue the Borrowers personally for any liability under the Loan Agreements and tentatively releases Principals from their liabilities and obligations arising under the Guaranties, except for surviving liabilities, provided that an Interference Event did not occur within 91 days of the Transfer Date, i.e., the date of the Deed in Lieu Agreement (the "91-Day Clause"). Finally, the Deed in Lieu Agreement provided that the Debtor and others would dissolve liquidate, terminate and wind up the affairs of the Borrowers.

### B. Procedural History

On April 28, 2010, Debtor filed a petition for Chapter 7 bankruptcy in the United States District Court for the Western District of North Carolina. (Second Am. Compl. ¶ 1.) The Trustee commenced this action on April 27, 2012. (ECF No. 1.) On September 18, 2012, it filed an amended complaint in this action. (ECF No. 23.) The Amended Complaint sought to avoid the transfer of the Property on the grounds that the Agreement was a constructive fraudulent transfer of the Debtor's property under New York, North Carolina and Utah law. (*See, e.g.*, Am. Compl. ¶¶ 15, 27, 29, 31, 40-42.) The Trustee also sought to rescind the Agreement on the grounds that 91-Day Clause was an unlawful provision. (Am. Compl. ¶¶ 46-52.) On October 17, 2012,

Defendants filed a motion to dismiss the Amended Complaint. (ECF No. 25.)

In an Order and Opinion dated September 30, 2013 (the "Order"), this Court granted in part and denied in part Defendants' motion to dismiss the Amended Complaint. *See Sigmon v. Goldman Sachs Mortg. Co.*, No. 12 Civ. 3367(ALC)(GWG), 2013 WL 5451410 (S.D.N.Y. Sept. 30, 2013). The Order dismissed the Trustee's constructive fraudulent transfer claims under New York and North Carolina law, holding that Trustee could only assert the claim under the law of the state where the Property is located. *See id.* at *3, n. 2. The Order denied Defendants' motion to dismiss the claim under Utah law, however, reasoning that Plaintiff had adequately alleged that she had an interest in the Property based on her equity interest in the companies that owned it. *See id.* at 5.

As to the Trustee's claim to void the Deed in Lieu Agreement, the Court granted the motion to dismiss without prejudice, and granted the Trustee leave to join any necessary parties and to, after limited discovery, amend the complaint to allege facts supporting an inference that the 91-Day Clause was an essential and indispensable provision of the Deed in Lieu Agreement. *See id.* at *9. The Court's rationale was the 91-Day Clause might be an impermissible *ipso facto* clause under Section 365(e) of the Bankruptcy Code, which could void the entire Deed in Lieu Agreement. *See id.*

On October 15, 2013, Defendants filed a Motion for Reconsideration. (ECF No. 49.) Defendants argued that the aforementioned holdings in the Order were in error because, among other things, under Utah law, a member of a limited liability corporation has no interest in the property of the corporation. *See* Defs.' Mot. for Reconsideration at 3-5. Defendants further argued that the Court erred in granting Plaintiff leave to replead the 91-Day Clause claim because the prohibition in Section 365(e) on *ipso facto* clauses only applies to executory

4

contracts. *Id.* at 6-11.

On July 24, 2014, the Court held a status conference at which Defendants' Motion for Reconsideration was addressed. At the conference, the Trustee requested and was granted leave to replead the constructive fraudulent transfer claim, and the Court also granted Defendants' leave to file another motion to dismiss. The Court denied Defendants Motion for Reconsideration on both claims without prejudice to renewal of their arguments on the subsequent motion to dismiss.

On August 5, 2014, the Trustee filed the operative Second Amended Complaint. In the Second Amended Complaint, the Trustee alleges that, pursuant to the Deed in Lieu Agreement, the Debtor transferred her 50% interest in DML LLC itself to Defendants. (Second Am. Compl. ¶¶ 27-32, 36.) This purported transfer is the basis of the Trustee's constructive fraudulent conveyance claim.[1]

Defendants filed the present motion to dismiss on September 4, 2014. Defendants argue that the constructive fraudulent transfer claim in the Second Amended Complaint should be dismissed because the Trustee's theory that the Debtor's interest in the LLC was transferred to Defendants under the Deed in Lieu Agreement exceeds the scope of amendment permitted by the Court. Defendants further argue that dismissal of the claim is warranted on the merits because the Trustee's allegation of a transfer of the Debtor's LLC interest is belied by documents in the

---

[1] The Court is aware that certain paragraphs of the Second Amended Complaint suggest that the basis of the Trustee's constructive fraudulent transfer claim, at least in part, is the Debtor's alleged transfer of an interest in the Property. (*See e.g.*, Second Am. Compl. ¶ 12, 47, 48(d).) However, the Court does not construe the Second Amended Complaint to make such a claim because the Trustee expressly disclaims it in his opposition to the instant motion to dismiss. *See* Pl.'s Opp'n Mot. to Dismiss, at 3 ("The Trustee, in the Second Amended Complaint, plainly alleges a transfer of specific personal property of the Debtor, her equity interest (i.e., her membership interest) in [Dakota], *not an interest in real property*.") (emphasis added).

5

public record and the language of the Deed in Lieu Agreement. Finally, Defendants renew the arguments made in their Motion for Reconsideration with respect to the dismissal of the Trustee's claim to void the Deed in Lieu Agreement.

### III. DISCUSSION

#### A. Legal Standards

In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In determining the legal sufficiency of the Amended Complaint, this Court "must accept as true all factual allegations and draw from them all reasonable inferences." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). This Court, however, is not bound by legal conclusions masquerading as factual allegations. *See id.* (quoting *Rothstein*, 708 F.3d at 94); *see also Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

#### B. Analysis

##### *1. Clarification of the September 30, 2013 Opinion & Order*

As a threshold matter, Defendants contend that Trustee's Second Amended Complaint exceeds the scope of the amendment permitted by the Court on July 24, 2014. In response, the Trustee argues that, in the Order, this "Court recognize[d] the Prior Trustee's Assertion [in the

Amended Complaint] of a Transfer by the Debtor of her Equity Interest in [Dakota]."[2] As support for this contention, the Trustee cites, for example, the following statement by the Court in the Order: "the alleged facts [in the Amended Complaint] suggest that Defendants gave nothing of value to the Debtor in exchange for the Debtor's transfer of *her equity interest in Dakota*." *Sigmon*, 2013 WL 5451410, at *5 (emphasis added). The Trustee also cites to two references in the Order to the Debtor's alleged transfer of her interest in "property" (with a lower case "p") which the Trustee infer refers to the Debtor's interest in Dakota on the grounds that the Order defined "Property" (with an upper case "P") as the "luxury hotel and spa property." The Trustee does not address Defendants' arguments that the transfer alleged in the Second Amended Complaint is contradicted by documents in the public record, however.

In light of the Trustee's arguments on the present motion, the Court clarifies that the above-referenced statements in the Order are typographical errors. This can be discerned from an *in toto* reading of the Order itself as, for example, in holding that the Amended Complaint alleged the transfer of "sufficient property under Utah law," the Order explicitly refers to the

---

[2] The alleged "prior assertion" referred to by Plaintiff's is Paragraph 42 of the Amended Complaint, which provides:

> In contravention of Sections 25-6-5 of Utah Code Annotated, the execution of the Deed In Lieu Agreement by the Debtor and her execution of documents transferring portions of the Property to the MLQ Entities were without "fair consideration" to the Debtor, in that: (c) upon information and belief, (i) the value of the Property exceeded the amount of any associated legitimate loan balance at the time of the execution of the Deed In Lieu Agreement and (ii) Duval Development, Restaurant Unit, Hotel Unit, DML Holdings, Duval Holdings and Dakota did not have any other known liabilities at the time of the Deed In Lieu Agreement; therefore, the Debtor's equity interest in Dakota had significant value and neither the Debtor nor Plaintiff has been compensated for the Debtor's transfer, assignment, sale or waiver of such equity interest.

The Court does not express a view as to whether this clause is such an assertion.

Debtor's "equitable interest in the *Property* [i.e., the luxury hotel and spa]." 2013 WL 5451410, at *4. Additionally, the Trustee's opposition to Defendants' motion to dismiss the Amended Complaint itself did not contend that the Amended Complaint alleged a transfer of the Debtor's interest in Dakota. Finally, had the Court determined that the Debtor's interest in Dakota was the alleged property interest transferred, the Court certainly would not have directed the Trustee to respond to Defendants' argument that its decision was erroneous because members of an LLC have no interest in the specific *property of the corporation* under Utah Law. *See* May 16, 2014 Order, at 1 (directing Trustee to respond to Section II-A-2-a of Defs.' Motion for Reconsideration), ECF No. 52; Defs.' Memo of Law in Support of Mot. for Reconsideration, at 4 (Section II-A-2-a citing to Utah Code § 48-2c-701 which provides that "[a] member [of an LLC] has no interest in specific property of [the] company").

Accordingly, the Court will issue an amended order correcting these typographical errors. In light of the Trustee's substantial reliance on these errors in repleading and in opposing Defendants' current motion to dismiss, however, the Court believes that fairness requires that the Trustee be accorded a reasonable opportunity to decide how it would like to proceed on this claim in light of the Court's clarification.[3] Accordingly, the Court will deny the branch of Defendant's motion to dismiss the constructive fraudulent transfer claim, without prejudice to

---

[3] The Court also notes, that for separate reasons, the Trustee's reliance on the Order's observation that "it [did] not appear" that a plaintiff "must specify the property interest" in order to state a claim of constructive fraudulent transfer under Utah law is misplaced. As a threshold matter, because the Order in fact analyzes whether the Trustee had alleged a sufficient property interest under Utah law in this case, this language is dicta. More importantly, however, it is well-established that a plaintiff must allege a "transfer" in order to state a claim for constructive fraudulent transfer under Utah law, *see, e.g.*, 2013 WL 5451410 at *4 (collecting cases), and, as the Court indicated in footnote 4 of the Order, "transfer," itself is defined in the relevant statute as "parting with an asset or interest in an asset," and "asset" is, in turn, defined as "*property* of a debtor." *See id.* at *5 n.4. Property is thus a constituent part of the requisite "transfer" element of constructive fraudulent transfer claims.

renewal at a later date, if necessary.

### 2. The 91-Day Clause Claim is Dismissed

The Court does grant, however, the branch of Defendants' motion to dismiss the Trustee's claim to void the Deed in Lieu Agreement. While the Court previously held in the October 2014 Order that the Trustee had stated a claim because the 91-Day Clause might be an impermissible *ipso facto* clause under Section 365 of the Bankruptcy Code, the Court is now convinced that that determination was clearly erroneous. *See, e.g.*, *Acha v. Beame*, 570 F.2d 57, 63 (2d Cir. 1978) (noting that district courts have discretion to reconsider prior interlocutory orders to correct clear errors or prevent manifest injustice). This is so for at least two reasons.

*First*, as Defendants point out, Section 365 applies only to executory contracts, i.e, contracts that as the date of a bankruptcy filing, have "obligations of both the bankrupt and the other party to the contract [that] are so far underperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *See, e.g., In re Acevedo*, 441 B.R. 428, 433-34 (Bankr. S.D.N.Y. 2010). The Deed in Lieu Agreement simply does not satisfy this standard, as all the material obligations of the parties had been performed by the time Debtor filed for bankruptcy. *See In re Penn Traffic*, 524 F.3d 373, 381 (2d Cir. 2008) (noting "[e]xecutoriness" is normally assessed on the date when a bankruptcy is commenced"). The Trustee's argument that the Deed in Lieu Agreement was executory because the Defendants had an ongoing obligation to forebear from foreclosure is unpersuasive. If an obligation to forebear were enough to render a contract executory, any contract under which the parties agreed to refrain from certain actions in perpetuity (e.g., agreed not to sue each other) would *always* be executory.

*Second*, the Court finds that dismissal is warranted because even if the 91-Day Clause

9

were an *ipso facto* clause, it would still fall outside of the reach of Section 365(e)'s prohibition against such clauses. Specifically, while Section 365(e) reflects an "overriding federal policy that *ipso facto* clauses are generally unenforceable," *see JPMorgan Chase Bank v. Charter Comm'ncs Operating, LLC*, 419 B.R. 221, 251 (Bankr. S.D.N.Y. 2009), consistent with that policy, courts only void an offensive *ipso facto* clause itself, keeping the remainder of the contract in force. *See* 11 U.S.C. § 365(e) ("[A]n unexpired contract . . . of the debtor may not be terminated or modified . . . at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on . . . the commencement of a case under this title . . . ."); *see also Liberty Mut. Ins. Co. v. Greenwich Ins. Co.*, 417 F.3d 193, 198-99 (1st Cir. 2005) ("This purpose [of Section 365(e)]—avowed in both legislative history and case law—is to protect the bankruptcy estate, primarily against the loss of contractual rights that the estate might choose to assume and reaffirm."); *In re S. Pac. Funding Corp.*, 268 F. 3d 712, 716 (9th Cir. 2001) ("By invalidating [ipso facto] clauses, Section 365(e)(1) . . . enabl[es] the bankruptcy trustee *to assume (and thus continue in force) beneficial contracts that otherwise would have terminated automatically or would have been terminated* by the other contracting party.") In this case, voiding the *ipso clause* itself would be inconsequential because the Trustee does not allege that it prevented the Debtor from filing for bankruptcy within the 91-day period and, in any event, seeks to avoid the Deed in Lieu Agreement rather than keep it in force.

IV.   CONCLUSION

For the reasons described above, Defendants' Motion to Dismiss the Second Amended Complaint is **GRANTED IN PART and DENIED IN PART.** (ECF No. 65.) The Trustee's cause of action to void the Deed in Lieu Agreement (Claim 2) is **DISMISSED.** Defendants' motion to dismiss the constructive fraudulent transfer claim (Claim 1) is **DENIED WITHOUT**

10

**PREJUDICE.** The Court also schedules a status conference for October 30, 2015 at 2:00 p.m. Counsel for the parties should report to Courtroom 1306 at the Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007.

**SO ORDERED.**

Dated: September 29, 2015
New York, New York

_____
ANDREW L. CARTER, JR.
**United States District Judge**

11