USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 7-22-16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

WAYNE SIGMON, Trustee in Bankruptcy for Karen LeBauer Hindin,

                              Plaintiff,

       –against–

GOLDMAN SACHS MORTGAGE COMPANY, MLQ HOTEL, L.L.C., MLQ HOTEL, L.L.C., MLQ DML SPA, L.L.C. and MLQ DML RESTAURANT, L.L.C.,

                              Defendants,

-------------------------------------------------------------------x

1:12–cv–3367 (ALC)

**OPINION & ORDER**

ANDREW L. CARTER, JR., United States District Judge:

## I. INTRODUCTION

In this action, Plaintiff Wayne Sigmon, as the Trustee of Debtor Karen LeBauer Hindin ("Trustee" and "Debtor," respectively), seeks to avoid the transfer of the Debtor's alleged property to Defendants, Goldman Sachs Mortgage ("Goldman Sachs"), MLQ DML Hotel, LLC, MLQ DML Spa LLC and MLQ DML Restaurant LLC (collectively, "MLQ Defendants" and together with Goldman Sachs, "Defendants"). The Trustee claims two defects with the underlying contract: that it effected a fraudulent transfer under Utah law and that it contained a provision that rendered the entire contract void as against public policy. Defendants have moved to dismiss the Trustee's Third Amended Complaint in its entirety. For the reasons discussed below, that motion is denied in part and granted in part.

## II. BACKGROUND

### A. Factual Background

As of July 8, 2009, Debtor held a 50% interest in Dakota Mountain Lodge LLC ("Dakota"). (Third Am. Compl. ¶ 9.) As of October 27, 2009, Dakota in turn held a 50% interest in Duval Development Partners I Holdings ("DDP Holdings"), which held a 100% interest in Duval Development Partners I ("DDP"). (Third Am. Compl. ¶ 10–11.) In addition, Dakota held a 40% interest in DML Holdings, another limited liability company, which held a 100% interest in Dakota Hotel Unit LLC ("Dakota Hotel") and Dakota Restaurant Unit LLC ("Dakota Restaurant"). (Third Am. Compl. ¶ 12–13.)

Goldman Sachs acted as lender under a Loan Agreement, dated June 29, 2006, with DDP Holdings and DDP (the "Original Borrowers"). (Third Am. Compl. ¶ 15–16.) DDP was the record owner of at least a portion of a luxury hotel and spa property in Park City, Utah (the "Property") subject to a Construction Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing recorded on or after June 29, 2006 (the "Deed of Trust"). (Third Am. Compl. ¶ 16.) On June 22, 2009, Dakota Hotel and Dakota Restaurant acquired the Property from DDP by quitclaim deed, at which point Dakota Hotel and Dakota Restaurant became Additional Borrowers also liable for the obligations of the Loan Agreement. (Third Am. Compl. ¶ 22.) The Debtor was a guarantor for the financing of the project and signed personal guaranties to increase the amounts of maximum indebtedness under the Deed of Trust and subsequent amendments to the Deed of Trust, guaranteeing the full amount of the Deed of Trust. (Third Am. Compl. ¶ 21.)

By September 2009, the Borrowers had defaulted on the Loan Agreement, rendering the Loan due and payable in full. (Third Am. Compl., Ex. A at 4). But to avoid the delay and

expense of foreclosure proceedings, the Borrowers and Goldman Sachs entered a Deed in Lieu of Foreclosure Agreement ("Deed in Lieu Agreement"), executed on October 27, 2009. Id. In accordance with the Deed in Lieu Agreement and "at the direction of Goldman," DDP Holdings, DDP, Dakota Hotel, and Dakota Restaurant (collectively, the "Borrowers") conveyed their aggregate 100% interest in the Property to the MLQ Defendants by special warranty deed. (Third Am. Compl. ¶¶ 23, 25.)

The Deed in Lieu Agreement included provisions indicating that the loan exceeded the value of the Property. (Third Am. Compl., Ex. A §§ 30). There is also a provision under which the Lender covenants not to sue the Borrowers personally for any liability under the Loan Agreements and tentatively releases Principals from their liabilities and obligations arising under the Guaranties, except for surviving liabilities, provided that an Interference Event did not occur within 91 days of the Transfer Date, i.e., the date of the Deed in Lieu Agreement (the "91–Day Clause"). Finally, the Deed in Lieu Agreement provided that the Debtor and others would dissolve liquidate, terminate and wind up the affairs of the Borrowers.

### B. Procedural History

On April 28, 2010, Debtor filed a petition for Chapter 7 bankruptcy in the United States District Court for the Western District of North Carolina. (Third Am. Compl. ¶ 1.) The Trustee commenced this action on April 27, 2012. (ECF No. 1.) On September 18, 2012, it filed an amended complaint in this action. (ECF No. 23.) The First Amended Complaint sought to avoid the transfer of the Property on the grounds that the Agreement was a constructive fraudulent transfer of the Debtor's property under New York, North Carolina and Utah law. (See, e.g., First Am. Compl. ¶¶ 15, 27, 29, 31, 37–42.) The Trustee also sought to rescind the Agreement on the grounds that 91–Day Clause was an unlawful provision. (First Am. Compl. ¶¶ 46–52.) On

3

October 17, 2012, Defendants filed a motion to dismiss the Amended Complaint. (ECF No. 25.)

In an Order and Opinion dated September 30, 2013 (the "Order"), this Court granted in part and denied in part Defendants' motion to dismiss the First Amended Complaint. See Sigmon v. Goldman Sachs Mortg. Co., No. 12 Civ. 3367(ALC)(GWG), 2013 WL 5451410 (S.D.N.Y. Sept. 30, 2013). The Order dismissed the Trustee's constructive fraudulent transfer claims under New York and North Carolina law, holding that Trustee could only assert the claim under the law of the state where the Property is located. See id. at *3, n. 2. The Order denied Defendants' motion to dismiss the claim under Utah law, however, reasoning that Plaintiff had adequately alleged that she had an interest in the Property based on her equity interest in the companies that owned it. See id. at 5.

As to the Trustee's claim to void the Deed in Lieu Agreement, the Court granted the motion to dismiss without prejudice, and granted the Trustee leave to join any necessary parties and to, after limited discovery, amend the complaint to allege facts supporting an inference that the 91–Day Clause was an essential and indispensable provision of the Deed in Lieu Agreement. See id. at *9. The Court's rationale was the 91–Day Clause might be an impermissible *ipso facto* clause under Section 365(e) of the Bankruptcy Code, which could void the entire Deed in Lieu Agreement. See id.

On October 15, 2013, Defendants filed a Motion for Reconsideration. (ECF No. 49.) Defendants argued that the aforementioned holdings in the Order were in error because, among other things, under Utah law, a member of a limited liability corporation has no interest in the property of the corporation. See Defs.' Mot. for Reconsideration at 3–5. Defendants further argued that the Court erred in granting Plaintiff leave to replead the 91–Day Clause claim because the prohibition in Section 365(e) on *ipso facto* clauses only applies to executory

4

contracts. *Id.* at 6–11.

On July 24, 2014, the Court held a status conference at which Defendants' Motion for Reconsideration was addressed. At the conference, the Trustee requested and was granted leave to replead the constructive fraudulent transfer claim, and the Court also granted Defendants' leave to file another motion to dismiss. The Court denied Defendants Motion for Reconsideration on both claims without prejudice to renewal of their arguments on the subsequent motion to dismiss.

On August 5, 2014, the Trustee filed the Second Amended Complaint, alleging that, pursuant to the Deed in Lieu Agreement, the Debtor transferred her 50% interest in DML LLC itself to Defendants. (Second Am. Compl. ¶¶ 27–32, 36.) This purported transfer was the basis of the Trustee's constructive fraudulent conveyance claim under Utah law.

Defendants moved to dismiss the Second Amended Complaint on September 4, 2014. Defendants argued that the constructive fraudulent transfer claim in the Second Amended Complaint should be dismissed because the Trustee's theory that the Debtor's interest in the LLC was transferred to Defendants under the Deed in Lieu Agreement exceeded the scope of amendment permitted by the Court. Defendants further argued that dismissal of the claim was warranted on the merits because the Trustee's allegation of a transfer of the Debtor's LLC interest was belied by documents in the public record and the language of the Deed in Lieu Agreement. Defendants also renewed the arguments made in their Motion for Reconsideration with respect to the dismissal of the Trustee's claim to void the Deed in Lieu Agreement.

On September 29, 2015, this Court granted in part and denied in part Defendants' motion to dismiss the Second Amended Complaint. See Sigmon v. Goldman Sachs Mortg. Co., No. 12 Civ. 3367(ALC)(GWG), 2015 WL 5724736 (S.D.N.Y. Sept. 29, 2015). Due to a

misunderstanding arising out of a typographical error in the Court's September 30, 2013 Opinion and Order concerning Trustee's claim under Utah law, the Court issued a corrected Opinion and Order. See Sigmon v. Goldman Sachs Mortg. Co., 539 B.R. 221 (S.D.N.Y. 2015). In order to provide the parties a reasonable and fair opportunity to address to clarifications in the Opinion and Order, the Court denied Defendants' motion to dismiss the claim under Utah law without prejudice and directed Trustee to re–plead the claim. See Sigmon v. Goldman Sachs Mortg. Co., No. 12 Civ. 3367(ALC)(GWG), 2015 WL 5724736 (S.D.N.Y. Sept. 29, 2015).

As to the Trustee's claim to void the Deed in Lieu Agreement, however, the Court granted the motion to dismiss. The Court reasoned that the Deed in Lieu Agreement was not an executory contract, and therefore Section 365 of the Bankruptcy Code was not, as Trustee contended, applicable law. Id. at 9. Second, the Court held that dismissal was further warranted because even if the 91–Day Clause might be an impermissible *ipso facto* clause under Section 365(e) of the Bankruptcy Code, due to an "overriding federal policy that ipso facto clauses are generally unenforceable," the clause would be severable and the remainder of the Deed in Lieu Agreement would survive avoidance. See id.

On August 5, 2014, the Trustee filed the Third Amended Complaint, renewing the allegation that, pursuant to the Deed in Lieu Agreement, the Debtor transferred her 50% interest in DML LLC itself to Defendants, thereby effectuating a constructive fraudulent conveyance under Utah law. (Third Am. Compl. ¶¶ 27–32, 36.) Trustee further asserted that by executing the Deed in Lieu Agreement and transferring her membership interest in DML, that Debtor also transferred her right to receive distributions from DML to Defendants. (Third Am. Compl. ¶¶ 27–32, 36.) Trustee also renewed the claim to void the Deed in Lieu Agreement as contrary to public policy previously dismissed by the Court, without seeking leave to do so.

Defendants moved to dismiss the Third Amended Complaint on January 20, 2016, arguing for the second time that: (1) Trustee's theory that the Debtor's interest in the LLC was transferred to Defendants under the Deed in Lieu Agreement exceeds the scope of amendment permitted by the Court, and that (2) Trustee's constructive fraudulent conveyance claim was contradicted by documents in the public record and the language of the Deed in Lieu Agreement. Defendants also asserted that Trustee's claim to void the Deed in Lieu Agreement had already been dismissed by the Court.

### III. DISCUSSION

#### A. Legal Standards

In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly v. Bell Atl. Corp., 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). In determining the legal sufficiency of the Third Amended Complaint, this Court "must accept as true all factual allegations and draw from them all reasonable inferences." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (quoting Rothstein v. UBS AG, 708 F.3d 82, 94 (2d Cir. 2013)). This Court, however, is not bound by legal conclusions masquerading as factual allegations. See id. (quoting Rothstein, 708 F.3d at 94); see also Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

When deciding a motion to dismiss, the Court is entitled to consider, among other things, facts alleged in the complaint, documents attached to the pleadings or incorporated by reference, documents that are "integral" to the plaintiff's claims, documents or information contained in the

7

defendants' motion papers, and facts of which judicial notice may be properly taken under Rule 201 of the Federal Rules of Evidence. Thomas v. Westchester County Health Care Corp., 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002); Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 47–48 (2d Cir. 1991); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

Rule 201 of the Federal Rules of Evidence permits judicial notice of a fact that is "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably . . . questioned." United States v. Bryant, 402 F. App'x 543, 545 (2d Cir.2010) (quoting Fed.R.Evid. 201). The Court may also take judicial notice of publicly available documents. See Byrd v. City of N.Y., No. 04–CV–1396, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005) ("[M]aterial that is a matter of public record may be considered in a motion to dismiss."); Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir.2004) (courts can "look to public records, including complaints filed in state court, in deciding a motion to dismiss"); In re Yukos Oil Co. Secs. Litig., No. 04–CV–5243, 2006 WL 3026024, at *21 n. 10 (S.D.N.Y. Oct. 25, 2006) (the "Court may take judicial notices of [published] articles on a motion to dismiss without transforming it into a motion for summary judgment.") (citing Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir.1991)). In the context of a motion to dismiss, the Court "should generally take judicial notice 'to determine what statements [the documents] contain[ ] . . . not for the truth of the matters asserted." Schubert v. City of Rye, 775 F.Supp.2d 689, 698 (S.D.N.Y. 2011) (quoting Kramer, 937 F.2d at 774).

### B. Analysis

*1.  Claim for Constructive Fraudulent Transfer Under Utah Code*

The parties' statements of facts and arguments concerning the Third Amended Complaint

are virtually identical to those asserted with regard to the First Amended Complaint. The only difference is that this time, Trustee addresses Defendants' arguments that the alleged transfer is contradicted by documents in the public record, namely Debtor's Statement of Financial Affairs filed in the underlying bankruptcy proceeding and entries in the Utah Business Search results regarding DML's registered principals.

Therefore, before addressing the merits of Defendants' Motion to dismiss, the Court must first address which documents may properly be considered on this Motion. The Court previously took judicial notice of the documents filed in the underlying bankruptcy proceeding, including the Debtor's Statement of Financial Affairs. See Sigmon v. Goldman Sachs Mortg. Co., No. 12 Civ. 3367(ALC)(GWG), 2013 WL 5451410 at *5 (S.D.N.Y. Sept. 30, 2013). The Court did not, however, take judicial notice of the Utah Business Search results; the Court does so now, for the fact that the statements contained therein were made, but not for the truth of the statements.

The statements contained in the Utah Business Search results are not sufficient to rebut Trustee's allegations that Debtor transferred a property interest pursuant to the Deed in Lieu Agreement. For the reasons set forth in in the Corrected Order and Opinion issued on September 29, 2015, the Court finds that Trustee has adequately pled a claim for constructive fraudulent transfer under Utah law. See Sigmon v. Goldman Sachs Mortg. Co., 539 B.R. 221 (S.D.N.Y. 2015). Therefore, Defendants' motion to dismiss this claim is denied.

### 2. *The 91–Day Clause Claim*

As noted above, Trustee did not seek, nor did the Court grant leave for Trustee to replead the 91–Day Clause Claim. For the reasons articulated in the September 29, 2015 Opinion and Order, Defendants' motion to dismiss Trustee's claim to void the Deed in Lieu Agreement is granted. See Sigmon v. Goldman Sachs Mortg. Co., No. 12 Civ. 3367(ALC)(GWG), 2015 WL

5724736 (S.D.N.Y. Sept. 29, 2015).

## IV. CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss the Third Amended Complaint is **GRANTED IN PART and DENIED IN PART**. (ECF No. 85.) Defendants' motion to dismiss the constructive fraudulent transfer claim (Claim 1) is **DENIED WITH PREJUDICE**. The Trustee's cause of action to void the Deed in Lieu Agreement (Claim 2) is **DISMISSED**.

The Court will hold a status conference on September 20, 2016 at 11:30 a.m. Counsel for the parties (and/or counsel) should report to Courtroom 1306 at the Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY 10007.

**SO ORDERED.**

Dated: July 21, 2016
New York, New York

ANDREW L. CARTER, JR.
**United States District Judge**

10