USDC SDNY
DOCUMENT ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/26/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
WAYNE SIGMON, Trustee in Bankruptcy for
Karen LeBauer Hindin,

         Plaintiff,     1:12-cv-3367 (ALC)

  -against-         **OPINION & ORDER**

GOLDMAN SACHS MORTGAGE COMPANY,
MLQ HOTEL, L.L.C., MLQ HOTEL, L.L.C.,
MLQ DML SPA, L.L.C. and MLQ DML
RESTAURANT, L.L.C.,

         Defendants,
----------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

In this action, Plaintiff Wayne Sigmon, as the Trustee for Debtor Karen LeBauer Hindin ("Trustee" and "Debtor," respectively), brings a constructive fraudulent transfer claim challenging a purported transfer of the debtor's property interest in a limited liability company to Defendants, Goldman Sachs Mortgage ("GS Mortgage"), MLQ DML Hotel, LLC, MLQ DML Spa LLC, and MLQ DML Restaurant LLC (collectively, "MLQ Defendants" and together with GS Mortgage, "Defendants"). Defendants now move for summary judgment on the threshold issue of whether a transfer occurred. For the following reasons, the motion is GRANTED.

## BACKGROUND

### Facts[1]

In June 2006, GS Mortgage made a mortgage loan (the "Loan") to Duval Development Partners I, LLC ("DDP") and Duval Development Partners I Holdings, LLC ("Duval Holdings") (collectively, the "Borrowers") for the purpose of financing the acquisition and construction of certain real property (the "Property"). Karen Hindin, the Debtor, was one of four guarantors of

---

[1] The following facts are undisputed unless otherwise noted.

certain obligations of the Borrowers under the Loan agreement. Neither a borrower on the Loan nor an owner of the Property, Debtor held a 50% membership interest in Dakota Mountain Lodge LLC ("DML"), which in turn held a 50% interest in Duval Holdings, which held a 100% interest in DDP.

In connection with its 2006 Loan to the Borrowers, GS Mortgage took various forms of collateral, including the Property itself, various associated bank accounts, equity interests in the Borrowers, and entities associated with the Borrowers. In connection with the Loan agreement, Debtor and her husband, Lee Hindin, signed an undated document titled "Certificate for Dakota Mountain Lodge LLC" ("DML Certificate") with the assignee left blank and another undated document titled "Limited Liability Company Membership Interest Power" ("LLC Membership Interest Power") also with the assignee left blank. Berman Decl. Exs. 6-7.

By September 2009, the Borrowers had defaulted on the Loan, rendering the Loan due and payable in full. As a result, GS Mortgage and the Borrowers agreed to enter the Deed in Lieu of Foreclosure Agreement ("DILA").[2] The DILA states that the agreement was entered "to avoid delay and expense for Borrowers and Lender, recognizing that Borrowers have no equity in the Mortgaged Property, Borrowers desire to transfer the Mortgaged Property to Transferees, and Lender desires to cause Transferees to accept them from Borrowers." Berman Decl. Ex. 3 (DILA) at p. 4. The DILA and associated documents provided for the transfer of certain collateral, including the Property and various other associated assets, including property management agreements, assignment of condo unit management agreements, and insurance policies to the MLQ Defendants. Exhibit B to the DILA, which lists the "Transfer Documents,"

---

[2] The DILA is governed by New York law. DILA § 6.3.

2

does not reference any document that would transfer membership interest in DML or the right to receive distributions thereunder. The DILA also provided that the Debtor and others would dissolve, liquidate, terminate, and wind up the affairs of the Borrowers. DILA § 4.3.

Procedural History

On April 28, 2010, Debtor filed a petition for Chapter 7 bankruptcy in the United States District Court for the Western District of North Carolina. Third. Am. Compl. ¶ 1. Plaintiff commenced this action on April 27, 2012. After various amendments to the complaint and rounds of motion to dismiss briefing, Plaintiff's only remaining claim is a constructive fraudulent transfer claim under Utah law, specifically that Debtor transferred to Defendants in connection with the DILA (1) her membership interest in DML and (2) her right to receive distributions from DML.

Discovery commenced. Magistrate Judge Gorenstein granted Defendants' application for expedited, limited discovery on the issue of whether Debtor transferred to Defendants her membership interest in DML or right to receive distributions thereunder. *See Sigmon v. Goldman Sachs Mortgage Co.*, 229 F. Supp. 3d 254 (S.D.N.Y. 2017). The basis for Defendants' application is that if there is no transfer of any property to Defendants, then there can be no constructive fraudulent transfer claim as a matter of Utah law. Judge Gorenstein found a "strong likelihood that" the issue of whether a transfer actually occurred "could be dispositive." *Id.* at 256 (internal quotation marks omitted). At a conference, the Court granted leave to Defendants to file their summary judgment motion. 7/17/2017 Conf. Tr. 25:8-24 (ECF No. 174).

**STANDARD OF REVIEW**

Summary judgment must be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

At summary judgment, the moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "[I]n cases where the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Brady v. Town of Colchester*, 863 F.2d 205, 210-11 (2d Cir. 1988) (citations omitted). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted). "More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (internal citations and quotation marks omitted).

## DISCUSSION

The issue here is whether Debtor transferred her membership interest in, or distribution

4

rights under, DML to Defendants as part of the DILA. Defendants argue that a transfer did not occur; on the contrary, Plaintiff counters that it did. The Court finds that the language of DILA establishes that Debtor did not transfer her interest in DML or any right to receive distributions thereunder to Defendants.

In resolving a motion for summary judgment involving contract interpretation, "a court should accord [the contract] language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (quoting *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)). Summary judgment is appropriate in a contract interpretation dispute when either "the language of the contract provision is wholly unambiguous" or "the language is ambiguous and there is relevant extrinsic evidence, but the extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157-158 (2d Cir. 2000) (citations omitted). Additionally, summary judgment is appropriate "regarding the interpretation of ambiguous language if the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language." *Id.* (citing *Mellon Bank v. United Bank Corp.*, 31 F.3d 113, 116 (2d Cir. 1994))

Section 2 of the DILA, entitled "The Transfer," is the first substantive section (after the Definitions section) of the DILA and describes the transfer. Section 2 provides for the transfer of all "Desired Collateral and certain other agreements (collectively, the "Transferred Assets") to

one or more of the transferees pursuant to the Transfer Documents."[3] DILA § 2.1. The Transfer Documents, also referred to as "Checklist of Deliverables" and listed in Exhibit B to the agreement, are 17 different categories of documents. Various provisions besides Section 2.1 of the DILA state that the transfer will be effected by the Transfer Documents. "Transfer" is defined as "the conveyance and transfer of all the Desired Collateral . . . to Transferees *under* the Transfer Documents." (emphasis added). DILA § 1. Section 2.2 of the DILA reads "Borrowers . . . shall implement, formalize and complete such Transfer by signing, acknowledging, and delivering to the Transferees all documents listed in Exhibit B. . . ."

Critically, the list of Transfer Documents does not reference or include Debtor's DML interest or the right to receive distributions thereunder. DILA Ex. B. The principle *expressio unius est exclusio alterius* i.e., "to express or include one thing implies the exclusion of the other, or of the alternative" applies here. *See VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 130 (2d Cir. 2001) (applying principle to contract interpretation under New York). Where, as is the case here, the parties specifically enumerate a list of items from a general class to which a provision is applicable, they mean to cover the specific items listed and to exclude other items. *IBM Poughkeepsie Emps. Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 590 F. Supp. 769, 773 n.19 (S.D.N.Y. 1984) ("when certain persons or categories are specified in a contract, an intention to exclude all others may be inferred"). Because the transfer was to take place pursuant to the Transfer Documents, the omission of any transfer document effecting a transfer of

---

[3]"Desired Collateral" is defined as "all of the Collateral except such portions of the Collateral as Lender may elect not to have transferred to the Transferees." DILA § 1. Collateral is defined under the Loan Agreement to include all collateral pledged to GS Mortgage in connection with the Loan. See Berman Decl. Ex. 1 (Loan Agreement) at 4-5.

Debtor's DML interest or right to receive distributions thereunder demonstrates that no such transfer ever happened. *See In re Ore Cargo, Inc.*, 544 F.2d 80, 82 (2d Cir. 1976) (holding that general security agreement did not convey security interest in tort claim where the agreement granted certain rights but omitted specific reference to tort claims).

This conclusion is further bolstered by the fact that the parties had already prepared but did not complete such transfer documents. Karen and Lee Hindin signed a "Certificate for Dakota Mountain Lodge LLC" and a "Limited Liability Company Membership Interest Power." R. 56.1 Stmt. ¶¶ 15-16; Berman Decl. Exs. 6-7. However, these documents are undated and the field for the transferee for each was left blank. The completion of such documents, with Defendants' names filled in as transferee, would suggest a transfer. Not only is there no document listed in Exhibit B transferring Debtor's interest in the DML or right to receive distributions thereunder but there are also no completed documents transferring such interest. As a result, no transfer took place pursuant to the DILA.

Plaintiff points to the general language of Section 3.1 of the DILA to show that such a transfer took place,[4] specifically the fourth sentence and the last sentence:

> 3.1 Absolute Transfer . . . The Transfer is intended as an absolute, present, and outright conveyance and transfer of all of each Borrower's and Borrower Affiliate's, as applicable, right, title, and interest in and to all Transferred Assets, in fact as well as in form . . . If it is ever determined that any Borrower or any Borrower Affiliate or any Principal has any equitable or other right in or with respect to any Transferred Asset, or

---

[4] In Plaintiff's opposition to summary judgment, Plaintiff relies on the expert reports of Marshall E. Tracht and Lawrence M. Solan. However, it is well-settled that contract interpretation is not a proper subject of expert testimony. *See, e.g., Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 510 (2d Cir. 1977) ("The question of interpretation of the contract is for the jury and the question of legal effect is for the judge. In neither case do we permit expert testimony."); *Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp. N.V.*, 14 F. Supp. 2d 391, 404 (S.D.N.Y. 1988) (excluding expert report because expert "would inevitably have to discuss his construction of the contract and the parties' obligations thereunder"); *Securities and Exchange Commission v. Gruss*, 245 F. Supp. 3d 527, 594 (S.D.N.Y. 2017) (excluding expert opinion where expert opined on whether a contract was violated). Accordingly, the Court does not consider these reports in its decision.

any right of redemption, then, for good and valuable consideration, Borrowers, on behalf of themselves and their Affiliates, and the Principals: (a) acknowledge that any such determination would be incorrect and erroneous; and (b) hereby sell, transfer, and convey to Transferees, and waive, any and all such equitable or other rights.

Section 3.1 is entitled "Absolute Transfer" and is situated in Section 3 entitled "Acknowledgments and Assurances" of the DILA. "[A] contract must be interpreted in accordance with the intent of the parties as revealed by the language and *structure of the contract*." *Frontline Commc'ns Int'l, Inc. v. Sprint Commc'ns*, 178 F. Supp. 2d 432, 436 (S.D.N.Y. 2001) (emphasis added); *see also Harris Trust and Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 970 F.2d 1138, 1146-1147 (2d Cir. 1992) (looking to the structure of the contract and specifically the titles of each article in the contract in order to interpret contract). The title or headings of a contract may be considered to provide context and inform the meaning of the sections they label. *See Small Business Bodyguard Inc. v. House of Moxie, Inc.*, No. 14-cv-170 (CM), 2015 WL 1290897, at *7 (S.D.N.Y. Mar. 20, 2015) (noting that headings of paragraphs "give[] a great deal of 'context' to the words that follow"); *Orchard Hill Master Fund Ltd. v. SBA Communications Corp.*, No. 14-CV-9962 (DAB), 2015 WL 5841232, at *8 n.6 (S.D.N.Y. Oct 1, 2015) (looking to title of section to "shed[] light on the meaning of the section").

The placement of Section 3.1 under "Acknowledgements and Assurances" and the title of it indicate that Section 3 concerns the protections and assurances to Defendants regarding the transfer. Therefore, Section 3.1 was not intended to effect additional or independent transfers. Consistent with the heading of the section, the fourth sentence of § 3.1 describes the *intent* of the transfer, ensuring that the transfer was complete. Also consistent with the heading of the section, the last sentence of Section 3.1 is intended to protect GS Mortgage from unforeseeable, future

claims as to the transferred assets. Contrary to Plaintiff's reading, Section 3.1 did not effect any independent or additional transfer of the interest in DML or right to receive distributions thereof.

Additionally, Plaintiff's attempt to use such general language to establish such a transfer is foreclosed by *Quadrant Structured Products Co. v. Vertin*, 23 N.Y.3d 549, 560, 16 N.E.3d 1165, 1172, 992 N.Y.S.2d 687, 694 (2014). There, the New York Court of Appeals stated that "where sophisticated drafter omits a term, *expressio unius* precludes the court from implying it from the general language of the agreement." *Id.* (citing *In re Ore Cargo, Inc.*, 544 F.2d at 82). If the parties intended to transfer the DML interest or the right to receive distributions thereunder, they would have explicitly listed it as a Transferred Asset in Section 2 and in Exhibit B.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and the Complaint is DISMISSED. All pending motions are denied as moot.[5]

**SO ORDERED.**

**Dated: March 26, 2018**
**New York, New York**

**ANDREW L. CARTER, JR.**
**United States District Judge**

---

[5] Defendants move to strike Plaintiff's expert reports. Assuming without deciding that these reports should be stricken due to their belated disclosure to the Defendant (the reports were filed concurrently with Plaintiff's opposition to the motion for summary judgment), the Court would grant the motion for the reasons stated in this Opinion at footnote 4.